# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Christopher J. Lucas, being duly sworn on oath, depose and say:

## INTRODUCTION

1. I am a Postal Inspector employed by the U.S. Postal Inspection Service (USPIS) assigned to the Denver Division, and have been so employed since September of 2005. I am currently assigned to the Prohibited Mail Team in Cheyenne, Wyoming. I have successfully completed the Postal Inspector Basic Training Program at the USPIS Career Development Unit in Potomac, Maryland.

2. Prior to becoming a United States Postal Inspector, I was employed as a Criminal Investigator with the Colorado Division of Gaming in Black Hawk, Colorado. During my employment as a law enforcement officer, both federal and state, I have received training in the area of narcotics investigations, laws of search and seizure, and criminal law and I have conducted criminal investigations involving theft and fraud related offenses.

3. As a U.S. Postal Inspector, I am authorized to investigate crimes involving federal offenses relating to the U.S. Postal Service. During the course of my employment with the Inspection Service, I have conducted or participated in criminal investigations involving mail theft, identity theft, credit card fraud, and bank fraud. I also have participated in the service of several federal search and arrest warrants.

4. As set forth below, there is probable cause to believe that evidence, fruits, and/or instrumentalities of violations of Title 18, United States Code, Sections 1029 (Access Device Fraud), 1708 (Mail Theft and Possession of Stolen Mail), 1028 (Identity Theft) and 1344 (Bank Fraud) exist in a Black, 2019 Nissan Maxima with Colorado license plate BIR-922, vehicle identification number 1N4AA6AV0KC363887, currently located in the impound lot at the Broomfield Detention Center at 11600 Ridge Parkway Broomfield CO 80021. The vehicle is more fully described in Attachment A.

5. I respectfully request permission to search the property and seize the items identified in Attachment B.

6. The information contained in this sworn statement is based upon my personal participation in the noted investigation, and information related to me by other law enforcement officers and private industry employees involved in the investigation. This sworn statement is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## SUMMARY OF INVESTIGATION

7. On March 18, 2019, I received reports that multiple post office boxes were broken into between March 15 and March 18, 2019 at the United Stated Postal Service (USPS) Downtown Station located at 2120 Capitol Ave, Cheyenne WY 82001. On March 20, 2019, USPS Clerk Duane Keslar provided a list of 14 post office boxes that were broken and needed repaired. Keslar stated he believed the boxes were pried open. Keslar stated P.O. Box X88 was one of the boxes he had to repair. The customer for the box, C.N., had been in the Post Office on March 16, 2019 and her key would not work in her box. The customer contacted the USPS Clerk who helped her retrieve her mail. Included in the list of boxes that had to be repaired was PO Box X28. This box is rented by R.D. and was repaired by Keslar. R.D. had contacted Keslar and reported that his debit card and pin number had been stolen and were being fraudulently used. R.D. stated he had already spoken with his bank about the debit card and charges.

8. On March 19, 2019, USPS Clerk Leroy Vigil provided a list of eight post office boxes that had been broken and needed repaired at the Main Post Office located at 4800 Converse Ave, Cheyenne, WY 82009. Vigil stated the boxes were discovered after he learned of the boxes

at the Downtown Station. PO Box XX227, rented by Therapy Dogs, Inc., and PO Box XX969, rented by D.G., were boxes that had to be repaired by Vigil.

9. On March 18, 2019, I received a message from Sharon Catellier, Vice President, Retail Banking Manager First Interstate Bank, asking for a return phone call. On March 19, 2019, I contacted Catellier by telephone. Catellier stated the bank had identified fraud on a customer's bank account using a debit card and pin number. The customer was R.D. Catellier stated she had contacted R.D. about the charges and he stated they were fraud. R.D. authorized Catellier to provide his banking information to the USPIS for further investigation. Catellier stated her bank had issued a replacement debit card to C.D., R.D.'s wife, and it had been mailed to PO Box X28, Cheyenne, WY 82003. Catellier stated the PIN was also mailed several days later. Catellier stated her system did not show that the card had been activated. Catellier provided contact information for R.D. Catellier provided a list of fraudulent transactions and stated she would request video surveillance from the ATM transactions.

10. On March 19, 2019, I contacted R.D. by telephone. R.D. stated his wife, C.D.'s, debit card was being fraudulently used between March 15 and March 17, 2019. He had received a call from First Interstate Bank alerting him of the transactions because they were out of routine for this account. R.D. stated that the bank confirmed that a new debit card for his wife was sent to his address to replace the one that was expiring. R.D. stated his wife's name is C.D. R.D. stated he and his wife live in Wellington, CO but had lived in Cheyenne for many years. R.D. stated he maintained his PO Box in Cheyenne, WY because he had had the address for a long time. R.D. said he only checks the PO Box occasionally when he comes to Cheyenne, WY. R.D. stated he went to the Post Office after being contacted by the Bank and tried to access his PO Box. R.D. stated his key would not work and he contacted Keslar. R.D. stated Keslar told him the lock was changed because the box had been broken into. R.D. stated all

of the money in the account plus $2000.00 in overdraft protection was taken from the account. R.D. also said three checks for approximately $10,000.00 had been deposited into the account.

11. On March 20, 2019 at approximately 8:00 am, I reviewed surveillance video at the Cheyenne Main Post Office. I began reviewing the surveillance video at approximately 5:30 PM on March 15, 2019. The surveillance video time and dates stamp shows the date as March 15, 2019. At approximately 1926 hours, a white male, wearing dark pants and dark colored hoody with the hood up, enters the post office and walks to the front of the PO Box Lobby. At approximately 1927:45 hours, the same white male walks to the PO Box hall on the west side of the lobby. The male is carrying mail at this time. At approximately 1928:10, he walks into the middle hall of the PO Box section. At approximately 1932 hours, he walks to the trash can and throws several pieces of mail in the trash and then heads to the exit of the post office while carrying additional mail pieces. He exits the building at approximately 1932:19 hours. A copy of the surveillance was downloaded.

12. I continued to review the surveillance video and snipped two still photos from the video. I sent the photos to the Lisa Gamboa, USPIS General Analyst in Denver, Colorado along with a description of the PO Box theft. Gamboa stated she believed that this person was Cory Snyder (Snyder) and indicated that U.S. Postal Inspector Bridget Ferrell in Denver, CO was also working a case where Snyder had been identified as the suspect in several post office box thefts.

13. Gamboa provided me with several pictures of Snyder from Inspector Ferrell's case and I compared them to the surveillance video I had. Based on a comparison of the photos, I determined Snyder was the suspect in the Post Office Box thefts in Cheyenne.

14. On March 20, 2019, Catellier provided the transactions for the C.D. debit card. The transactions included ATM withdrawals at First Interstate Bank downtown branch and the

Rue Terre Branch in Cheyenne, WY, Target in Thornton, CO, Walmart in Westminster, CO, Kum & Go in Wellington, CO, Loaf N Jug in Wellington, CO and Big D in Cheyenne, WY. Three checks were also provided that had been deposited into the R.D./C.D. account.

15. Check #XX716 in the name of D.G. PO Box XX969 Cheyenne WY 82003-7020 was made payable to C.D. in the amount of $2500.00. The check appears to be a credit card convenience check from Citibank, N.A.

16. Check #XXX724 in the name of M.W. X925 Waldo Ln., Wellington CO was made payable to C.D. in the amount of $3523.15. The check appears to be a credit card convenience check from Chase Bank USA, NA.

17. Check #X018 in the name of J.A. XX498 WDCR 20 Fort Lupton, CO 80621 was made payable to C.D. in the amount of $4255.36. The check appears to be a credit card convenience check from Wells Fargo Bank N.A.

18. A total of $2529.38 in fraudulent charges were charged though the account using the debit card, $1545.00 of the total was for ATM withdrawals and $7.50 of the total was fees that were charged.

19. On March 20, 2019 at approximately 5:30 PM, I reviewed video surveillance from the USPS Downtown Station in Cheyenne, WY. The Downtown station is located 2120 Capital Ave, Cheyenne WY inside the J.C. O'Mahoney Federal Building and the cameras are controlled by the Federal Protective Service and monitored by Paragon Systems. The surveillance video review was conducted with Security Officer Ray Contreras. I began reviewing video of the post office at approximately 5:30 PM on the night of March 15, 2018. At 2050 hours, a man walks into the post office and down the hallway containing all of the post office boxes. I identified the man as Snyder by comparing the surveillance photos previously reviewed and the photos from Inspector Ferrell's investigation. The video then shows Snyder walking out of the post office carrying a large amount of mail. The video surveillance does not show all

of the post office boxes, just the hallway. I reviewed additional cameras and was able to determine that Snyder arrived at the Downtown Station at approximately 2049:46 in a dark colored, Nissan, four door sedan. Snyder parked the sedan in front of the Downtown Station, but I was unable to read the license plate. Snyder left the post office at approximately 2055:29, got into the vehicle and drove away to the South on Capital Ave.

20. On March 21, 2019, Catellier provided ATM surveillance from the First Interstate Bank. The surveillance footage showed a man, who I identified as Snyder, using the ATM with the C.D. debit card. The surveillance photos show a dark colored Nissan four door sedan approach the ATM. The license plate is not readable, but appears to be a Colorado license plate. Snyder is visible in the still photos from the bank surveillance.

21. On March 21, 2019, I contacted the Big D convenience store located at 2310 W Lincolnway Cheyenne, WY and spoke with District Assistant Manager Maria. Maria stated she would review video of the ATM usage and the parking lot to determine if they had any photos of the C.D. debit card being used. Maria provided information that there was a vehicle parked at pump 11 and but it was too far away from the camera to identify the license plate. I showed Maria a still image of Snyder, who she recognized and said that Snyder went through the restaurant to use the ATM. Maria stated that there was not any facial video of him but that she would provide the surveillance video they had.

22. On March 21, 2019 at approximately 11:50 AM, I contacted Manager Adam Moore at the Kum & Go located at 8150 6th Street Wellington CO and requested information and surveillance video for the C.D. debit card transaction on March 16, 2019 at 09:19 hours in the amount of $117.21. Moore was able to review surveillance video of the transaction and provided a copy of the receipt for the transaction. I reviewed the surveillance video and the video showed a man, who I identified as Snyder, enter the store at approximately 10:17 AM

and purchase two breakfast items, a coke and two gift cards. The surveillance video showed Snyder was driving a dark colored four door sedan. The license plate was not readable.

23. On March 21, 2019 at approximately 1230 PM, I contacted Cindy Yingling, Manager Loaf and Jug located at 8211 6th Street Wellington CO and requested transaction information and surveillance video for the C.D. debit card transactions. Yingling was able to provide the transaction detail from March 15, 2019 at 10:18 pm. Yingling also provided surveillance video, which I reviewed. On the surveillance video a man, who I identified as Snyder, purchased two gift cards using the C.D. debit card. Snyder arrived at the store at approximately 2213:48 in a black Nissan four door sedan with a Colorado license plate and entered the store. The license plate was not readable. Snyder purchased the gift cards and used the ATM and then left the store at approximately 2220:06 hours.

24. On March 22, 2019, I received information that Snyder had been arrested by the Broomfield Police Department for fraud, assault, and resisting arrest as well as for a Fugitive of Justice warrant from El Paso County, CO. I spoke with Inspector Ferrell regarding the arrest and coordinated with her to contact Broomfield Police Detective Larson. Inspector Ferrell confirmed that Snyder was in custody at the Broomfield Detention center and had been arrested attempting to open a bank account and pass three checks made payable to Alliance of Therapy Dogs. Snyder had the three checks in his possession in the bank when he was arrested. Alliance of Therapy Dogs is located in Cheyenne WY and maintains PO Box XX227 Cheyenne WY 82003. As noted above, this PO Box is located at the Cheyenne Main Post Office and needed to be repaired.

25. Detective Larson confirmed he has spoken with Amy at Alliance of Therapy Dogs and she stated that Snyder should not have the checks and that she believed they had been stolen from the PO Box. Detective Larson also confirmed that the debit card in the name of C.D. was not in Snyder's possession at the time of his arrest.

26. Inspector Ferrell and I met with Detective Larson at the detention Center and were able to locate a black four door Nissan Maxima, VIN 1N4AA6AV0KC363887, with Colorado license plate BIR-922 in the impound lot. Detective Larson stated the vehicle had been in the possession of Snyder when he was arrested. Detective Larson stated they had not searched the car but there were items in the vehicle. While looking through the window I was able to see a backpack on the front seat. In the passenger seat back pocket, there were paper items and envelopes that could be stolen mail. Also visible through the window was gift cards material in the front cup holder that appeared to be the cardboard paper backing that the actual card would be attached to. Detective Larson stated that the car would be held until a search warrant was obtained. The vehicle is a rental registered to EAN Holdings (Enterprise Rent-A-Car) located at 7201 S Fulton St., Centennial CO 80112.

27. On March 22, 2019, Inspector Grieme contacted Enterprise Rent-A-Car by telephone and requested information regarding the rental of the 2019 Nissan sedan with Colorado License plate BIR-922. Inspector Grieme was told the vehicle was rented by Cory Snyder, for the period of March 14 – March 23, 2019. The address provided by Snyder was X01 Malley Dr., APT 214, Northglenn, CO 80233 with a phone number of XXX-XXX-5440. The address information matched the address for Snyder that Inspector Ferrell had determined was where Snyder had lived recently.

**Background about Evidence in Mail Theft and Related Investigations**

28. Based on my training and experience in conducting mail theft investigations, I know that persons engage in mail theft to obtain items of financial value, including, but not limited to, cash, gift cards, personal and business checks, credit or debit cards and money orders. These items can be retained for long periods of time, as the mail thieves will often use the stolen financial information until fraudulent activity is detected by, or reported to, the financial institution and the account is closed. In some cases, victims may not discover fraudulent

activity for over 30 days, until they receive their next monthly statement.  Therefore, the fraudulent activity can occur over the course of several weeks.

29. I also know that mail thieves often look to obtain personal financial information and identifying information from the stolen mail.  This information is then often used to create new, counterfeit access devices or identifications, or to alter existing access devices.  Often, the stolen personal identifying information is used to create a counterfeit identification document that matches the name of the victim of the stolen access device.  This purportedly gives the suspect some supporting documentation to demonstrate legitimacy to the bank or retail employee who may question the counterfeit or stolen access devices during an attempted transaction.

30. I am aware that individuals involved in the crimes of possession of stolen mail and access device fraud often store evidence of the crimes on electronic devices and digital media.  This stolen personal and financial information is often retained for quick reference.

31. Other evidence often located in or on electronic devices may include, but is not limited to:

    a. Account numbers for, or images of, access devices to include debit cards, credit cards, ATM cards, gift cards and checks.

    b. Credit card records including receipts, account statements, payment statements, payment receipts, purchase receipts.

    c. Documents reflecting the source, receipt, transfer, control, ownership and disposition of financial records.

    d. Depictions of stolen U.S. Mail.

    e. Images, depictions, or duplications of identifications, driver's licenses, or Social Security Number cards belonging to victims of identity and related theft.

    f. Evidence of dominion and control of the electronic device.

    g. Any other form, document(s), or documentation (duplicate, counterfeit or original) which can be used to unlawfully or falsely access personal financial accounts.

    h. Evidence of purchase, or photographs of, merchandise taken from the retail stores deemed to be stolen or obtain through fraudulent means.

i. Digital video, photographs or audio recordings depicting the commission of suspected violations, or depicting evidence thereof.

32. Identity thieves often keep or record histories specific to each individual victim. These histories often include documentation of attempted or completed applications for credit in the victim's name (whether via the U.S. Mail, the Internet, or telephone). Also included are histories of attempts to obtain goods, services, merchandise or money using the victim's name and means of identification. These histories are maintained to track the status of orders or applications and the distribution of goods, services, merchandise, and money to accomplices and acquaintances.

33. Individuals who engage in identity theft frequently maintain the records described above using methods similar to the records of legitimate businesses. Such records are often retained for long periods of time and often identify co-conspirators, victims and sources of information. Such records often indicate locations of purchases, sales, returns, and negotiation of items related to identity theft. These records are commonly maintained either in handwritten form, or on a computer or computer medium such as a digital or optical based storage device.

34. Individuals who engage in identity theft schemes and bank fraud commonly use computers, scanners, color printers, digital cameras, and graphic design software to help facilitate the scheme. In addition to the traditional uses of computer equipment listed above, individuals engaged in identity theft also commonly obtain information regarding victims from commercial and public sources and databases available on the internet.

## **CONCLUSION**

35. Based on the investigation described above, probable cause exist to believe that in a Black, 2019 Nissan Maxima with Colorado license plate BIR-922, vehicle identification number

1N4AA6AV0KC363887, currently located in the impound lot at the Broomfield Detention Center at 11600 Ridge Parkway Broomfield CO 80021 (described more fully in Attachments A) will contain evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1029, 1028, 1708 and 1344.

Respectfully submitted this 27th day of March, 2019.

*s/ Christopher Lucas*
Christopher Lucas
United States Postal Inspector

Submitted, attested to, and acknowledged before me by reliable electronic means on March 27, 2019.

BY THE COURT:

_____
HON.
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**This Application and Affidavit was reviewed and submitted by AUSA Kelly Winslow**